**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

| | |
|---|---|
| KATHLEEN MCATEER, individually and on behalf of all others similarly situated,<br><br>c/o Barnow and Associates, P.C.<br>205 West Randolph St., Ste. 1630<br>Chicago, IL 60606<br><br>        Plaintiff,<br><br>   v.<br><br>DISTRICT OF COLUMBIA HEALTH BENEFIT EXCHANGE AUTHORITY, d/b/a DC HEALTH LINK,<br><br>1225 Eye Street, NW, Suite 400<br>Washington, D.C. 20005<br><br>        Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Kathleen McAteer, individually, and on behalf of all others similarly situated (collectively, "Class members"), by and through her attorneys, brings this Class Action Complaint against Defendant District of Columbia Health Benefit Exchange Authority, d/b/a DC Health Link ("DC Health Link" or "Defendant"), and complains and alleges upon personal knowledge as to herself and information and belief as to all other matters.

## INTRODUCTION

1.     Plaintiff brings this class action against DC Health Link for its failure to secure and safeguard her and approximately 56,415 other individuals' personally identifying information ("PII") and personal health information ("PHI"), including names, Social Security numbers, dates

of birth, gender, health plan information, employer information, and enrollee information such as address, email, phone number, race, ethnicity, and citizenship status.

2.      DC Health Link is governed by the District of Columbia Health Benefits Exchange Authority for the purpose of implementing a healthcare exchange program under the Affordable Care Act in the District of Columbia.

3.      On or about March 6, 2023, DC Health Link learned that an unauthorized individual, or unauthorized individuals, had gained access to DC Health Link's network systems and accessed and acquired files from the system that contained the PII/PHI of Plaintiff and Class members (the "Data Breach") and published some of that information online.

4.      DC Health Link owed a duty to Plaintiff and Class members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PII/PHI against unauthorized access and disclosure. DC Health Link breached that duty by, among other things, failing to implement and maintain reasonable security procedures and practices to protect its customers' PII/PHI from unauthorized access and disclosure.

5.      As a result of DC Health Link's inadequate security and breach of its duties and obligations, the Data Breach occurred, and Plaintiff's and Class members' PII/PHI was accessed and disclosed. This action seeks to remedy these failings and their consequences. Plaintiff brings this action on behalf of herself and all persons whose PII/PHI was exposed as a result of the Data Breach.

6.      Plaintiff, on behalf of herself and all other Class members, asserts claims for negligence, negligence per se, breach of fiduciary duty, breach of implied contract, and unjust enrichment, and seeks declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

## PARTIES

### Plaintiff Kathleen McAteer

7.    Plaintiff Kathleen McAteer is a citizen of the District of Columbia.

8.    Plaintiff McAteer was required to provide her PII and PHI to DC Health Link in connection with seeking, purchasing, or otherwise receiving health insurance.

9.    Based on representations made by DC Health Link, Plaintiff McAteer believed that DC Health Link had implemented and maintained reasonable security and practices to protect her PII/PHI. With this belief in mind, Plaintiff McAteer provided her PII/PHI to DC Health Link in connection with or in exchange for health insurance-related services or products provided by or accessed through DC Health Link.

10.    In connection with services provided to Plaintiff McAteer, DC Health Link stores and maintains Plaintiff's PII/PHI on its systems, including the system involved in the Data Breach.

11.    Had Plaintiff McAteer known that DC Health Link does not adequately protect the PII/PHI in its possession, she would not have agreed to provide DC Health Link with her PII/PHI or used DC Health Link's services.

12.    Plaintiff McAteer received a letter from DC Health Link notifying her that her PII/PHI was exposed in the Data Breach.

13.    As a direct result of the Data Breach, Plaintiff McAteer has suffered injury and damages including, *inter alia*, a substantial and imminent risk of identity theft and medical identity theft; the wrongful disclosure and loss of confidentiality of her highly sensitive PII/PHI; deprivation of the value of her PII/PHI; and overpayment for services that did not include adequate data security.

*Defendant DC Health Link*

14.    Defendant DC Health Link is an independent, distinct, and separate authority of the District of Columbia created to implement a health insurance exchange program within the District of Columbia. Its principal place of business is located at 1225 Eye Street, NW, Suite 400, Washington, DC 20005.

## JURISDICTION AND VENUE

15.    The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2), because (a) there are 100 or more Class members, (b) at least one Class member is a citizen of a state that is diverse from DC Health Link, and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

16.    This Court has personal jurisdiction over DC Health Link because DC Health Link is organized under the laws of the District of Columbia, has its principal place of business in the District of Columbia, and does business within the District of Columbia.

17.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because DC Health Link's principal place of business is in the District of Columbia and a significant amount of the events leading to Plaintiff's causes of action occurred in this District.

## FACTUAL ALLEGATIONS

### *Overview of DC Health Link*

18.    DC Health Link "was created and is governed by the DC Health Benefit Exchange Authority."[1] Its mission is to ensure "access to quality and affordable health care to all DC residents."[2] "Approximately 100,000 people have private health insurance through DC Health

---

[1] *About Us*, DC HEALTH LINK, https://www.dchealthlink.com/welcome (last accessed Apr. 10, 2023).
[2] *Id.*

Link," including "more than 5,000 District small businesses, approximately 11,000 designated Congressional staff and Members of Congress, and thousands of District residents."[3]

19.    The DC Health Benefits Exchange Authority "is a private-public partnership established to foster competition and transparency in the private health insurance market, enabling individuals and small businesses to compare health insurance prices and benefits and to purchase affordable, quality health insurance."[4] DC Health Link acknowledges that it "is required to protect the personally identifiable information ("Personally Identifiable Information" or "PII") it collects and maintains."[5]

20.    DC Health Link claims "consumer privacy is important to us."[6] It further claims that it "respect[s] your right to privacy and will protect the information we maintain about you in the ongoing operation of the health benefit exchange ('Exchange') in accordance with applicable laws, regulations and standards for security and privacy."[7]

21.    DC Health Link claims it "take[s] steps to protect your privacy in accordance with the privacy and security standards for the protection of PII established under the Patient Protection and Affordable Care Act set forth in federal regulation (45 C.F.R. § 155.260)."[8] It is DC Health Link's "policy that it will create, collect, use and/or disclose and maintain Personally Identifiable Information only to the extent necessary to accomplish a specified purpose consistent with its Exchange functions."[9]

---

[3] *About the DC Health Benefit Exchange Authority*, DC HEALTH BENEFIT EXCH. AUTH., https://hbx.dc.gov/node/316092 (last accessed Apr. 10, 2023).
[4] *Id.*
[5] *Privacy and Security Policy for Exchange Operations*, DC Health Link (Nov. 1, 2013), https://hbx.dc.gov/node/716102 (last accessed Apr. 10, 2023).
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*

22.     DC Health Link states that "PII you provide us will be disclosed by us only to Authority employees; business partners; grantees; contractors; designees; governmental agencies, insurance companies (and, where necessary, to law enforcement officials)," and that it "will only share your information as permitted or required by law."[10]

23.     DC Health Link further promises that:

"Security measures have been integrated into the design, implementation and day-to-day practices of the entire Exchange operating environment as part of its continuing commitment to risk management. [PII] is protected with reasonable operational, administrative, technical, and physical safeguards to ensure its confidentiality, integrity . . . and to prevent unauthorized or inappropriate access, use, or disclosure. The Authority utilizes industry standard methods and mechanisms for data protection, such as firewalls, intrusion monitoring, and passwords to protect electronic information. Multiple physical security methods, such as locking devices and premises monitoring, are also employed to protect information contained in documents. The Authority website is equipped with security measures intended to protect the information you provide us. We encrypt credit card numbers and other data that must remain secure to meet legal requirements.[11]

24.     In the regular course of its business, DC Health Link collects and maintains the PII/PHI of its customers.[12]

25.     Plaintiff and Class members are, or were, customers of DC Health Link and entrusted DC Health Link with their PII/PHI.

### *The Data Breach*

26.     On or about March 6, 2023, DC Health Link became aware that an unauthorized individual, or unauthorized individuals, gained access to its network systems and accessed and acquired certain files on DC Health Link's computer systems, some of which had been published

---

[10] *Id.*

[11] *Id.*

[12] For example, DC Health Link states in its Privacy Policy that "People who apply for health coverage need to provide a social security number ('SSN'), if they have one." *Id.*

on a hacking forum.[13]

27.    The Data Breach impacted the PII/PHI of customers who used DC Health Link's exchange services or purchased health insurance products through DC Health Link. DC Health Link has stated that approximately 56,415 individuals were affected.[14] The cybercriminal who put the PII/PHI for sale on the dark web claimed to have the records of 170,000 persons.[15]

28.    The notice posted on DC Health Link's website states that the information that the cybercriminal had access to includes the following PII/PHI: "name, Social Security number, date of birth, gender, health plan information (*e.g.* plan name, carrier name, premium amounts, employer contribution, and coverage dates), employer information, enrollee information (*e.g.* address, email, phone number, race, ethnicity, and citizenship status)."[16]

29.    According to the notice posted on DC Health Link's website, it has identified a group of persons whose information was taken in the Data Breach and posted publicly on a public data breach forum.[17]

### DC Health Link Knew that Criminals Target PII/PHI

30.    At all relevant times, DC Health Link knew, or should have known, that the PII/PHI that it collected was a target for malicious actors. Despite such knowledge, DC Health Link failed to implement and maintain reasonable and appropriate data privacy and security measures to

---

[13] *Data Breach Incident Response Updates*, DC HEALTH LINK, https://www.dchealthlink.com/data-breach (last accessed Apr. 10, 2023).
[14] *Id.*
[15] *See DC Health Link Data Breach: More than 56,000 Users Affected*, FOX5 WASHINGTON DC (Mar. 11, 2023), https://www.fox5dc.com/news/dc-health-link-data-breach-more-than-56000-users-affected (last accessed Apr. 12, 2023).
[16] *See Data Breach Incident Response Updates*, n.13, *supra*
[17] *See Data Breach Incident Response Updates*, n.13, *supra*

protect Plaintiff's and Class members' PII/PHI from cyber-attacks that DC Health Link should have anticipated and guarded against.

31.    It is well known amongst companies that store sensitive personally identifying information that sensitive information—such as the Social Security numbers ("SSNs") and medical information stolen in the Data Breach—is valuable and frequently targeted by criminals. In a recent article, *Business Insider* noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers . . . . Many of them were caused by flaws in . . . systems either online or in stores."[18]

32.    Cyber criminals seek out PHI at a greater rate than other sources of personal information. In a 2023 report, the healthcare compliance company Protenus found that there were 956 medical data breaches in 2022 with over 59 million patient records exposed.[19] This is an increase from the 758 medical data breaches which exposed approximately 40 million records that Protenus compiled in 2020.[20]

33.    PII/PHI is a valuable property right.[21] The value of PII/PHI as a commodity is measurable.[22] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory

---

[18] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUS. INSIDER (Nov. 19, 2019, 8:05 A.M.), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

[19] *See* PROTENUS, *2023 Breach Barometer*, PROTENUS.COM, https://www.protenus.com/breach-barometer-report (last accessed Apr. 10, 2023).

[20] *See id.*

[21] *See* Marc van Lieshout, *The Value of Personal Data*, 457 INT'L FED'N FOR INFO. PROCESSING 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…"), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[22] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE.COM (April 28, 2014), http://www.medscape.com/viewarticle/824192.

frameworks."[23] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[24] It is so valuable to identity thieves that once PII/PHI has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

34.    As a result of the real and significant value of this material, identity thieves and other cyber criminals have openly posted credit card numbers, SSNs, PII/PHI, and other sensitive information directly on various Internet websites making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be readily aggregated and become more valuable to thieves and more damaging to victims.

35.    PHI is particularly valuable and has been referred to as a "treasure trove for criminals."[25] A cybercriminal who steals a person's PHI can end up with as many as "seven to ten personal identifying characteristics of an individual."[26]

36.    All-inclusive health insurance dossiers containing sensitive health insurance information, names, addresses, telephone numbers, email addresses, SSNs, and bank account information, complete with account and routing numbers, can fetch up to $1,200 to $1,300 each

---

[23] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD iLIBRARY (April 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[24] *See* IAB Data Center of Excellence, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, IAB.COM (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

[25] *See* Andrew Steager, *What Happens to Stolen Healthcare Data*, HEALTHTECH MAGAZINE (Oct. 20, 2019), https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon ("*What Happens to Stolen Healthcare Data*") (quoting Tom Kellermann, Chief Cybersecurity Officer, Carbon Black, stating "Health information is a treasure trove for criminals.").

[26] *Id.*

on the black market.[27] According to a report released by the Federal Bureau of Investigation's ("FBI") Cyber Division, criminals can sell healthcare records for 50 times the price of a stolen Social Security or credit card number.[28]

37.    Criminals can use stolen PII/PHI to extort a financial payment by "leveraging details specific to a disease or terminal illness."[29] Quoting Carbon Black's Chief Cybersecurity Officer, one recent article explained: "Traditional criminals understand the power of coercion and extortion . . . By having healthcare information—specifically, regarding a sexually transmitted disease or terminal illness—that information can be used to extort or coerce someone to do what you want them to do."[30]

38.    Consumers place a high value on the privacy of that data, as they should. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[31]

---

[27] *See* SC Staff, *Health Insurance Credentials Fetch High Prices in the Online Black Market*, SC MAG. (July 16, 2013), https://www.scmagazine.com/news/breach/health-insurance-credentials-fetch-high-prices-in-the-online-black-market.

[28] *See* Federal Bureau of Investigation, *Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain* (April 8, 2014), https://www.illuminweb.com/wp-content/uploads/ill-mo-uploads/103/2418/health-systems-cyber-intrusions.pdf.

[29] *What Happens to Stolen Healthcare Data*, *supra* note 24.

[30] *Id.*

[31] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFO. SYS. RSCH. 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

39.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII/PHI has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

### Theft of PII/PHI Has Grave and Lasting Consequences for Victims

40.     Theft of PII/PHI is serious. The FTC warns consumers that identity thieves use PII/PHI to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[32]

41.     Identity thieves use personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[33] According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[34]

---

[32] *See* Federal Trade Commission, *What to Know About Identity Theft*, FED. TRADE COMM'N CONSUMER INFO., https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed Apr. 10, 2023).

[33] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 12 C.F.R. § 1022.3(h). The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 12 C.F.R. § 1022.3(g).

[34] *See* Susan Henson, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN, https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/ (last accessed Apr. 10, 2023).

42.    With access to an individual's PII/PHI, criminals can do more than just empty a victim's bank account—they can also commit all manner of fraud, including: obtaining a driver's license or official identification card in the victim's name but with the thief's picture; using the victim's name and SSN to obtain government benefits; or, filing a fraudulent tax return using the victim's information. In addition, identity thieves may even give the victim's personal information to police during an arrest.[35]

43.    Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[36]

44.    Theft of SSNs also creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of their SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

45.    Due to the highly sensitive nature of SSNs, theft of SSNs in combination with other PII (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. TIME quotes data security researcher Tom Stickley, who is employed by companies to find flaws in their computer systems, as stating, "If I have your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[37]

---

[35] *See* Federal Trade Commission, *Warning Signs of Identity Theft*, IDENTITYTHEFT.GOV https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed Apr. 10, 2023).
[36] *See* Identity Theft Resource Center, *2021 Consumer Aftermath Report*, IDENTITY THEFT RES. CTR. (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/ (last accessed Apr. 10, 2023).
[37] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (August 5, 2019), https://time.com/5643643/capital-one-equifax-data-breach-social-security/.

46.    Theft of PII is even more serious when it includes theft of PHI. Data breaches involving medical information "typically leave[] a trail of falsified information in medical records that can plague victims' medical and financial lives for years."[38] It "is also more difficult to detect, taking almost twice as long as normal identity theft."[39] In warning consumers on the dangers of medical identity theft, the FTC states that an identity thief may use PII/PHI "to see a doctor, get prescription drugs, buy medical devices, submit claims with your insurance provider, or get other medical care." [40] The FTC also warns, "If the thief's health information is mixed with yours it could affect the medical care you're able to get or the health insurance benefits you're able to use."[41]

47.    A report published by the World Privacy Forum and presented at the US FTC Workshop on Informational Injury describes what medical identity theft victims may experience:

- Changes to their health care records, most often the addition of falsified information, through improper billing activity or activity by imposters. These changes can affect the healthcare a person receives if the errors are not caught and corrected.

- Significant bills for medical goods and services neither sought nor received.

- Issues with insurance, co-pays, and insurance caps.

- Long-term credit problems based on problems with debt collectors reporting debt due to identity theft.

- Serious life consequences resulting from the crime; for example, victims have been falsely accused of being drug users based on falsified entries to their medical files; victims have had their children removed from them due to medical activities of the imposter; victims have been denied jobs due to incorrect information placed in their

---

[38] Pam Dixon and John Emerson, *The Geography of Medical Identity Theft*, FTC.GOV (Dec. 12, 2017), http://www.worldprivacyforum.org/wp-content/uploads/2017/12/WPF_Geography_of_Medical_Identity_Theft_fs.pdf.

[39] *See* Federal Bureau of Investigation, *Health Care Systems and Medical Devices at Risk…*, *supra* note 27.

[40] *See What to Know About Medical Identity Theft*, FEDERAL TRADE COMMISSION CONSUMER INFORMATION, https://www.consumer.ftc.gov/articles/what-know-about-medical-identity-theft (last accessed Apr. 10, 2023).

[41] *Id.*

health files due to the crime.

• As a result of improper and/or fraudulent medical debt reporting, victims may not qualify for mortgage or other loans and may experience other financial impacts.

• Phantom medical debt collection based on medical billing or other identity information.

• Sales of medical debt arising from identity theft can perpetuate a victim's debt collection and credit problems, through no fault of their own.[42]

48.    There may also be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[43]

49.    It is within this context that Plaintiff and Class members must now live with the knowledge that their PII/PHI is forever in cyberspace and was taken by and in the possession of people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black-market.

### Damages Sustained by Plaintiff and the Other Class Members

50.    Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of identity theft; (ii) the compromise, publication, and theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (iv) lost time and opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII/PHI which remains in DC Health Link's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair

---

[42] *See* Pam Dixon and John Emerson, *The Geography of Medical Identity Theft*, *supra* note 37.
[43] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 J. OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

the impact of the PII/PHI compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

## CLASS ALLEGATIONS

51.     This action is brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

52.     Plaintiff brings this action on behalf of herself and all members of the following Nationwide Class of similarly situated persons:

> All persons whose personally identifiable information or personal health information was compromised in the Data Breach by unauthorized persons, including all persons who were sent a notice of the Data Breach.

53.     Excluded from the Class are DC Health Link, the DC Health Benefits Exchange Authority, and its affiliates, parents, subsidiaries, officers, agents, and directors, members of the Executive Board, members of the Advisory Board, as well as the judge(s) presiding over this matter and the clerks of said judge(s).

54.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

55.     The members in the Class are so numerous that joinder of each of the Class members in a single proceeding would be impracticable. DC Health Link reported on its website that approximately 56,415 persons' information was exposed in the Data Breach.[44]

56.     Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

---

[44] *Data Breach Incident Response Updates*, *supra* note 13.

a.  Whether DC Health Link had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class members' PII/PHI from unauthorized access and disclosure;

b.  Whether DC Health Link had duties not to disclose the PII/PHI of Plaintiff and Class members to unauthorized third parties;

c.  Whether DC Health Link failed to exercise reasonable care to secure and safeguard Plaintiff's and Class members' PII/PHI;

d.  Whether an implied contract existed between Class members and DC Health Link, providing that DC Health Link would implement and maintain reasonable security measures to protect and secure Class members' PII/PHI from unauthorized access and disclosure;

e.  Whether DC Health Link engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII/PHI of Plaintiff and Class members;

f.  Whether DC Health Link breached its duties to protect Plaintiff's and Class members' PII/PHI; and

g.  Whether Plaintiff and Class members are entitled to damages and the measure of such damages and relief.

57.    DC Health Link engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

58.    Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had her PII/PHI compromised in the Data Breach. Plaintiff and Class

members were injured by the same wrongful acts, practices, and omissions committed by DC Health Link, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

59.    Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff is an adequate representative of the Class in that she has no interests adverse to, or that conflict with, the Class she seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

60.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against DC Health Link, so it would be impracticable for Class members to individually seek redress from DC Health Link's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

61.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

62.    DC Health Link owed a duty to Plaintiff and Class members to exercise reasonable care in safeguarding, securing, and protecting the PII/PHI in its possession, custody, or control.

63.    DC Health Link knew, or should have known, the risks of collecting and storing Plaintiff's and Class members' PII/PHI, and the importance of maintaining secure systems. DC Health Link knew, or should have known, of the many data breaches that targeted health care providers in recent years.

64.    Given the nature of DC Health Link's business and activities, the sensitivity and value of the PII/PHI it maintains, and the resources at its disposal, DC Health Link should have identified the vulnerabilities in its systems and prevented the Data Breach from occurring.

65.    DC Health Link breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII/PHI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII/PHI entrusted to it—including Plaintiff's and Class members' PII/PHI.

66.    It was, or should have been, reasonably foreseeable to DC Health Link that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII/PHI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class members' PII/PHI to unauthorized individuals.

67.     Given the well-publicized nature of data breaches, especially those affecting healthcare companies, and given DC Health Link knew or should have known of the likelihood of a targeted cyberattack, DC Health Link's negligent failure to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, or protocols rises to the level of gross or willful negligence.

68.     But for DC Health Link's negligent conduct or breach of the above-described duties owed to Plaintiff and Class members, their PII/PHI would not have been compromised.

69.     As a result of DC Health Link's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and all other Class members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased and imminent risk of identity theft and medical identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII/PHI; (iii) breach of the confidentiality of their PII/PHI; (iv) deprivation of the value of their PII/PHI, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face; and (vi) overpayment for the services that were received without adequate data security.

## COUNT II
## NEGLIGENCE PER SE

70.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

71.     DC Health Link's duties arise from, *inter alia*, the HIPAA Privacy Rule ("Standards for Privacy of Individually Identifiable Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and E, and the HIPAA Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C (collectively, "HIPAA Privacy and Security Rules"). Plaintiff and Class members are the persons that the HIPPA Privacy and Security Rules were intended to protect and the harm that Plaintiff and Class members suffered is the type of harm the rules were intended to guard against.

72.     DC Health Link's duties also arise from Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by business, such as DC Health Link, of failing to employ reasonable measures to protect and secure PII/PHI. Plaintiff and Class members are the persons that the Section 5 of the FTCA was intended to protect and the harm that Plaintiff and Class members suffered is the type of harm Section 5 of the FTCA intended to guard against.

73.     DC Health Link's duties also arise from 45 C.F.R. § 155.260, which sets out the circumstances under which DC Health Link can disclose personally identifiable information, and forbids disclosure unless it "is consistent with this section." The regulation also states that "[p]ersonally identifiable information should be protected with reasonable operational, administrative, technical, and physical safeguards to ensure its confidentiality, integrity, and availability and to prevent unauthorized or inappropriate access, use, or disclosure." 45 C.F.R. § 155.260(a)(3)(vii).

74.     Under 45 C.F.R. § 155.260, DC Health Link is further required to:

[E]stablish and implement operational, technical, administrative and physical safeguards that are consistent with any applicable laws (including this section) to ensure—

(i) The confidentiality, integrity, and availability of personally identifiable information created, collected, used, and/or disclosed by the Exchange;

(ii) Personally identifiable information is only used by or disclosed to those authorized to receive or view it; . . .

(iv) Personally identifiable information is protected against any reasonably anticipated threats or hazards to the confidentiality, integrity, and availability of such information;

(v) Personally identifiable information is protected against any reasonably anticipated uses or disclosures of such information that are not permitted or required by law.

45 C.F.R. § 155.260(a)(4).

75.     DC Health Link knew or should have known the risks of collecting and storing Plaintiff's and all other Class members' PII/PHI and the importance of maintaining secure systems. DC Health Link knew or should have known of the many data breaches that have targeted companies that stored PII/PHI in recent years.

76.     Given the nature of DC Health Link's activities, the sensitivity and value of the PII/PHI it maintains, and the resources at its disposal, DC Health Link should have identified the vulnerabilities to its systems and prevented the Data Breach from occurring.

77.     DC Health Link makes numerous explicit statements on its website that it will follow privacy laws and regulations and use reasonable methods to protect the PII/PHI in its control.

78.     DC Health Link acknowledges that it is mandated by law to, *inter alia*, use reasonable methods to protect the PII/PHI in its possession.

79.     DC Health Link breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII/PHI by failing to design, adopt,

implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII/PHI entrusted to them—including Plaintiff's and Class members' PII/PHI.

80.     Plaintiff and Class members had no ability to protect their PII/PHI that was, or remains, in DC Health Link's possession.

81.     It was or should have been reasonably foreseeable to DC Health Link that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII/PHI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class members' PII/PHI to unauthorized individuals.

82.     But for DC Health Link's negligent conduct or breach of the above-described duties owed to Plaintiff and Class members, their PII/PHI would not have been compromised. The PII/PHI of Plaintiff and the Class was lost and accessed as the proximate result of DC Health Link's failure to exercise reasonable care in safeguarding, securing, and protecting such PII/PHI by, *inter alia*, adopting, implementing, and maintaining appropriate security measures.

83.     As a result of DC Health Link's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of identity theft; (ii) the compromise, publication, and theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (iv) lost opportunity costs associated with

efforts attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII/PHI which remains in DC Health Link's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

**COUNT II**
**BREACH OF FIDUCIARY DUTY**

84.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

85.    As a condition of obtaining services from DC Health Link, Plaintiff and Class members gave DC Health Link their PII/PHI in confidence, believing that DC Health Link would protect that sensitive information. Plaintiff and Class members would not have provided DC Health Link with this information had they known it would not be adequately protected. DC Health Link's acceptance and storage of Plaintiff's and Class members' PII/PHI created a fiduciary relationship between DC Health Link and Plaintiff and Class members. In light of this relationship, DC Health Link must act primarily for the benefit of its customers, which includes safeguarding and protecting Plaintiff's and Class members' PII/PHI.

86.    DC Health Link has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of their relationship. It breached that duty by failing to properly protect the integrity of the system containing Plaintiff's and Class members' PII/PHI, failing to comply with the data security guidelines set forth by HIPAA, and otherwise failing to safeguard Plaintiff's and Class members' PII/PHI that it collected.

87.     As a direct and proximate result of DC Health Link's breach of their fiduciary duties, Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of identity theft; (ii) the compromise, publication, and theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (iv) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII/PHI which remains in DC Health Link's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

## COUNT III
## BREACH OF IMPLIED CONTRACT

88.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

89.     In connection with purchasing or receiving health insurance and related services, Plaintiff and all other Class members entered into implied contracts with DC Health Link.

90.     Pursuant to these implied contracts, Plaintiff and Class members paid money to DC Health Link, used DC Health Link's services, and provided DC Health Link with their PII/PHI. In exchange, DC Health Link agreed to, among other things, and Plaintiff understood that DC Health Link would: (1) provide products or services to Plaintiff and Class member; (2) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' PII/PHI; and (3) protect Plaintiff's and Class members' PII/PHI in compliance with federal and state laws and regulations and industry standards.

24

91.     The protection of PII/PHI was a material term of the implied contracts between Plaintiff and Class members, on the one hand, and DC Health Link, on the other hand. Had Plaintiff and Class members known that DC Health Link would not adequately protect its customers' and former customers' PII/PHI, they would not have paid for products or services from DC Health Link.

92.     Plaintiff and Class members performed their obligations under the implied contract when they provided DC Health Link with their PII/PHI and paid for products and services from DC Health Link, expecting that their PII/PHI would be protected.

93.     DC Health Link breached their obligations under their implied contracts with Plaintiff and Class members in failing to implement and maintain reasonable security measures to protect and secure their PII/PHI, and in failing to implement and maintain security protocols and procedures to protect Plaintiff's and Class members' PII/PHI in a manner that complies with applicable laws, regulations, and industry standards.

94.     DC Health Link's breach of its obligations of the implied contracts with Plaintiff and Class members directly resulted in the Data Breach and the resulting injuries to Plaintiff and Class members.

95.     Plaintiff and all other Class members were damaged by DC Health Link's breach of implied contracts because: (i) they paid for data security protection they did not receive; (ii) they now face a substantially increased and imminent risk of identity theft and medical identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII/PHI was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII/PHI has been breached; (v) they were deprived of the value of their PII/PHI, for which there is a well-established national and international market;

(vi) they lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face; and (vii) they overpaid for the services that were received without adequate data security.

**COUNT IV**
**UNJUST ENRICHMENT**

96.     Plaintiff realleges and incorporates by reference paragraphs 1–87 as if fully set forth herein.

97.     This claim is pleaded in the alternative to the breach of implied contract claim.

98.     In obtaining services from DC Health Link, Plaintiff and Class members provided and entrusted their PII and PHI to DC Health Link.

99.     Plaintiff and Class members conferred a monetary benefit upon DC Health Link in the form of monies paid for products or services, with an implicit understanding that DC Health Link would use some of its revenue to protect the PII/PHI it collects.

100.    DC Health Link accepted or had knowledge of the benefits conferred upon them by Plaintiff and Class Members. DC Health Link also benefitted from the receipt of Plaintiff's and Class members' PII/PHI, as this was used to facilitate billing, payment, information exchange, or marketing services.

101.    As a result of DC Health Link's conduct, Plaintiff and Class members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that Plaintiff and Class members paid for, and those payments without reasonable data privacy and security practices and procedures that they received.

102.    DC Health Link should not be permitted to retain the money belonging to Plaintiff and Class members because DC Health Link failed to adequately implement the data privacy and

security procedures for itself that Plaintiff and Class members paid for and that were otherwise mandated by federal, state, and local laws, regulations, and industry standards.

103.    DC Health Link should be compelled to provide for the benefit of Plaintiff and Class members all unlawful proceeds received by them as a result of the conduct and Data Breach alleged herein.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in their favor and against DC Health Link as follows:

A.    Certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel;

B.    Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C.    Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of herself and the Class, seeks appropriate injunctive relief designed to prevent DC Health Link from experiencing another data breach by adopting and implementing best data security practices to safeguard PII/PHI and to provide or extend credit monitoring services and similar services to protect against all types of identity theft and medical identity theft;

D.    Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E.    Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F.      Awarding Plaintiff and the Class such other favorable relief as allowable under law.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.


Dated: April 14, 2023                              Respectfully submitted,

                                                   /s/ Gary E. Mason
                                                   Gary E. Mason (DC Bar 418073)
                                                   Danielle L. Perry (DC Bar 1034960)
                                                   **MASON LLP**
                                                   5335 Wisconsin Avenue NW, Suite 640
                                                   Washington, DC 20015
                                                   Tel: (202) 429-2290
                                                   gmason@masonllp.com
                                                   dperry@masonllp.com

                                                   Ben Barnow*
                                                   Anthony L. Parkhill*
                                                   **Barnow and Associates, P.C.**
                                                   205 West Randolph Street, Suite. 1630
                                                   Chicago, IL 60606
                                                   Tel: 312-621-2000
                                                   Fax: 312-641-5504
                                                   b.barnow@barnowlaw.com
                                                   aparkhill@barnowlaw.com

                                                   *Counsel for Plaintiff Kathleen McAteer*

                                                   *\*pro hac vice forthcoming*